UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDRE NORBERT LEMONIOUS, <br><br> Plaintiff-Petitioner, <br><br> v. <br><br> LORI STREETER, Superintendent, Franklin County Correctional Facility, <br><br> Defendant-Respondent. | Civil Action No. 19-30038-MGM |

MEMORANDUM AND ORDER REGARDING
A SECOND BOND HEARING FOR PETITIONER
(Dkt. Nos. 26, 27)

February 14, 2020

MASTROIANNI, U.S.D.J.

## I.  INTRODUCTION

Andre Nobert Lemonious ("Petitioner") is currently being detained by U.S. Immigration and Customs Enforcement ("ICE") pursuant to 8 U.S.C. § 1226(c). He has been in ICE's custody since October 26, 2017. On October 31, 2017, ICE initiated removal proceedings against Petitioner based on his drug-related convictions in 2007 and 2016. Petitioner moved to terminate the removal proceedings, alleging he was a United States citizen. In January 2018, an Immigration Judge ("IJ") denied the motion to terminate and ordered Petitioner's removal to Jamaica. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision in July 2018. Petitioner filed a petition for review with the court of the United States Court of Appeals for the Second Circuit on July 16, 2018. Petitioner also moved for the Second Circuit to stay his removal. In the middle of these events, in June 2018, Petitioner received a bond hearing before the IJ as a result of being a member of the *Reid*

class. *See Reid v. Donelan*, 22 F. Supp. 3d 84, 88 (D. Mass. 2014) ("*Reid III*"), *vacated*, 2018 WL 4000993 (1st Cir. May 11, 2018). Petitioner had been detained for eight months at this point. The IJ refused to issue a bond.

Petitioner initiated this case by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in March 2019. In April 2019, the Department of Homeland Security ("DHS") noticed its intention to remove Petitioner from the United States to Jamaica in a week and to transfer the Petitioner outside of the district to effectuate that removal. The court stayed Petitioner's transfer and later, on October 3, 2019, stayed the case pending the resolution of Petitioner's appeal before the Second Circuit.[1] However, the court ordered the parties to show cause regarding whether Petitioner should be granted a second bond hearing in light of a recent July 2019 decision in *Reid v. Donelan*, No. 3:13-cv-30125-PBS (D. Mass).

The parties submitted their briefs and the court heard argument on February 12, 2020. For the reasons below, the court orders that Petitioner receive, within ten calendar days, a bond hearing that complies with the requirements of *Reid v. Donelan*, 390 F. Supp. 3d 201 (D. Mass. 2019) ("*Reid VI*").

## II. FACTUAL BACKGROUND

Petitioner was born in September 1986 in Jamaica. In 1996, at the age of nine, he immigrated to the United States, with his mother and two brothers, and lived with them in New York as a lawful permanent resident. In October 2002, at sixteen years old, Petitioner was arrested on drug charges. He was adjudicated as a youthful offender, sentenced, and incarcerated from March 2003 to January 2006. While incarcerated at the age of seventeen, his mother became a naturalized United States citizen. Therefore, according to Petitioner, he became a U.S. citizen under 8 U.S.C. § 1431(a) and

---

[1] The Second Circuit also stayed Petitioner's removal on September 13, 2019, pending determination of his appeal.

removal proceedings cannot apply to him, which is the issue under consideration on appeal in the Second Circuit.

In May 2006, Petitioner was arrested in New York and then later convicted of drug dealing offenses involving cocaine that resulted in a sentence of seven years imprisonment and five years of supervised release. He was released from prison in July 2012. In February 2016, Petitioner was arrested in Connecticut for drug dealing offenses involving heroin. Two months later, he was convicted and sentenced to seven years imprisonment, suspended after thirty months. His current term of supervised release was revoked, and he was remanded to the custody of the Bureau of Prisons ("BOP") for twenty months. From October 26 to 31, 2017, upon his release from the BOP, Petitioner was detained by ICE and charged by DHS with removability as a noncitizen who had been convicted of two crimes involving moral turpitude, a violation of a controlled substance offense, and an aggravated felony for drug trafficking and conspiracy.

At the bond hearing held in June 2018, the IJ noted Petitioner's convictions. In particular, the IJ asked Petitioner about his dealing of cocaine in 2006, his release in 2012, and his arrest in 2016 for dealing of heroin. The IJ contemplated whether selling heroin made Petitioner a danger to the community based on how dangerous heroin can be. The IJ also noted that Petitioner seemed to have failed several times to learn his lesson and expressed his concern that, if released, Petitioner would simply go back to the streets to deal drugs again.

Petitioner's response was that he had matured and come to the realization that working and being with family were important, particularly now because he had a child to take care of. He explained that while in jail, he had participated in various programs, had not been involved in trouble or written up for anything, had held a job, and tried to learn responsibility. His counsel also raised the fact that none of Petitioner's crimes involved violence and that, if released, Petitioner would be on probation in the State of Connecticut. The government's response was that Petitioner's

criminal record spoke for itself, noting any wakeup call at this point to be too little, too late. The government believed Petitioner to be a danger based on the fact that he has dealt drugs that kill people, and "even if he goes out and violates his probation . . . who's to say he's not gonna' kill somebody in the process." Based on the record, the IJ denied bond.

In October 2019, the Second Circuit heard oral argument on Petitioner's appeal. Petitioner has now been in ICE detention for twenty-eight months.

## III.  LEGAL STANDARD

In *Reid VI*, the court held that "mandatory detention without a bond hearing under 8 U.S.C. § 1226(c) violates due process when the detention becomes unreasonably prolonged in relation to its purpose in ensuring the removal of deportable criminal aliens." *Reid VI*, 390 F. Supp. 3d at 227. With respect to reasonableness, the court rejected a bright-line six-month rule in favor of an individualized approach. *Id.* at 216–19. It listed several, nonexclusive factors as relevant in determining reasonableness, recognizing the most important factor to be the length of detention. *Id.* at 219. Although the court rejected a bright-line time limit for reasonable detention, it held that a detention of one year is likely to be unreasonably prolonged or, in other words, raises a presumption of unreasonableness. *Id.* at 219–20. Once mandatory detention under § 1226(c) is unreasonably prolonged in violation of due process, the alien must bring a habeas petition in federal court to challenge the detention. If he prevails, a bond hearing before an immigration judge must take place. *Id.* at 220–22. The court also held that due process requires the government, at the bond hearing, to bear the burden to prove an alien's dangerousness, by clear and convincing evidence, and the alien's risk of flight, by a preponderance of the evidence. *Id.* at 224. In addition, due process requires an immigration judge to consider alternative conditions of release, such as GPS monitoring, that reasonably assure the safety of the community and the criminal alien's future appearances. *Id.* at 225.

The standards set forth in *Reid VI* differ significantly from previous standards set forth in

*Reid III*. Prior to *Reid III*, the court had certified a class, defined to be "all individuals who are or will be detained within the Commonwealth of Massachusetts pursuant to 8 U.S.C. § 1226(c) for over six months and have not been afforded an individualized bond hearing." *Reid III*, 22. F. Supp. 3d at 87. In *Reid III*, the court held that a bond hearing was required for any member of the class detained for longer than six months, choosing to follow the bright-line approach. *Reid III*, 22 F. Supp. 3d at 90–91, 93. However, the court declined to find that due process requires the burden of proof to be placed on the government in the bond hearing. Therefore, the burden would be on the alien to prove that he was not dangerous and did not pose a risk of flight. *Id.* at 92–93. In addition, the court declined to order immigration judges to consider all alternatives to detention when contemplating an individual's release on bail. *Id.* at 92. It was under *Reid III* that the IJ conducted Petitioner's bond hearing in June 2018, using the standards that *Reid III* held were applicable.

To prevail on his request for a new bond hearing based on his argument that the June 2018 bond hearing was constitutionally deficient, Petitioner must show prejudice. *Cf. Brito v. Barr*, -- F. Supp. 3d --, 2019 WL 6333093 (D. Mass. 2019) (granting plaintiff's request for an order requiring new bond hearings for class members who were prejudiced by the constitutional deficiencies of their original bond hearings); *Mayic v. Hodgson*, Civ. No. 19-12534-PBS, 2020 WL 360502, at *1 (D. Mass. Jan. 22, 2020) (applying *Brito*). "To establish prejudice, a petitioner must show that a due process violation *could* have affected the outcome of the custody redetermination hearing." *Mayic*, 2020 WL 360502, at *1 (alteration in original); *see also Pensamiento v. McDonald*, 315 F. Supp. 3d 692, 693 (D. Mass. 2018) ("Finally, Petitioner must show he was prejudiced by the constitutional error. . . . If the government had borne the burden of proof, the IJ could well have found that Pensamiento was not dangerous based on a single misdemeanor conviction . . . ." (internal citation omitted)).

## IV.  DISCUSSION

Petitioner argues that because the IJ placed the burden on Petitioner to prove he was neither

a danger to the community nor a flight risk and, additionally, did not consider alternatives to prolonging Petitioner's detention, Petitioner's bond hearing was unconstitutional. Therefore, as a matter of law, Petitioner deserves a new hearing because the errors were structural. Furthermore, Petitioner argues he deserves a new hearing because he was prejudiced by the errors. Specifically, if the burden had been properly placed on the government, the IJ could well have found Petitioner was not a danger to the community nor a flight risk. In addition, the IJ could have found alternatives to detention addressing safety or flight risk.

The government argues that even if Petitioner's June 2018 bond hearing was defective, it does not automatically entitle Petitioner to a new hearing. Instead, the court should first determine whether Petitioner's mandatory detention under 8 U.S.C. § 1226(c) has been unreasonably prolonged under the factors listed in *Reid VI*, find that detention has not been unreasonable, and deny a new hearing. The government argues that although *Reid VI* held the length of detention to be the most important factor, it listed other factors which all support a finding that Petitioner's detention has not been unreasonably prolonged.[2]

First, the court finds that Petitioner's detention has been unreasonably prolonged. In *Reid*, the court held that mandatory detention lasting for more than one year, excluding any delays due to the alien's dilatory tactics, is presumed unreasonable. Petitioner has been detained for two years and four months. While Petitioner's detention has been prolonged because of his pending appeal, the court does not find his filing the appeal to have been a dilatory tactic. Petitioner has a right to pursue his appeal. *See Reid v. Donelan*, 819 F.3d 486, 500 n.4 (1st Cir. 2016), *opinion withdrawn on reconsideration on other grounds*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018) ("[T]here is a difference

---

[2] The government also argued, in court, that ordering a new bond hearing for Petitioner would open a floodgate of new hearings for others detained under § 1226(c). The court views this outcome to be unlikely given the unusual facts and circumstances of this case and the court's narrow findings. That is not to say that the court would find a floodgate should stay closed in the face of meritorious claims of constitutional violations merely because they are great in number.

between 'dilatory tactics' and the exercise of an alien's rights to appeal."). Moreover, Petitioner's appeal is not frivolous but appears to raise a novel question of statutory interpretation that could result in Petitioner being a U.S. citizen and not subjectable to removal.

The question then is whether the fact that Petitioner has already received a bond hearing satisfies what Petitioner is entitled to. Although Petitioner argues he is entitled to a new bond hearing as a matter of law because of structural error, the court does not reach that issue because it finds there to have been prejudicial error. With respect to dangerousness and the risk of flight, the court does not find that Petitioner has shown prejudice. Petitioner argues that his criminal history was the sole evidence on which the government relied to prove dangerousness. This characterization flattens what occurred at the hearing. The IJ questioned Petitioner about his repeated drug dealing offenses and his failure to learn from his mistakes and pointed out how dangerous heroin is to the community. Although Petitioner has shown admirable behavior while incarcerated, the court does not find that, based on such behavior, the IJ could well have found that the government had not met its burden by clear and convincing evidence that Petitioner was not a danger to the community. In the context of criminal prosecution, the dealing of drugs has been the basis of clear and convincing evidence of dangerousness supporting detention of defendants. *See, e.g.*, *United States v. Curet*, No. 07-cr-1715-TSH, 2007 WL 9655867, at *4 (D. Mass. Nov. 16, 2007) (detaining defendant because of clear and convincing evidence of dangerousness based on history of distributing drugs, including while on probation); *United States v. Samuels*, 436 F. Supp. 2d 280, 286–87 (D. Mass. 2006); *United States v. Arndt*, 329 F. Supp. 2d 182, 197–98 (D. Mass. 2004); *United States v. Gutierrez*, 106 F. Supp. 2d 172, 173–74 (D. Mass. 2000). Petitioner also argues that the IJ did not make findings as to Petitioner's flight risk. In light of the dangerousness finding, a failure to find flight risk is not prejudicial.

Nevertheless, because the IJ did not consider alternative conditions of release that

reasonably assure the safety of the community, the court finds prejudicial error that warrants a new bond hearing. The government argued in court that although the IJ did not make an explicit finding as to alternative conditions of release, the transcript sufficiently shows that he considered the issue. The court disagrees. In fact, the law at the time did not require the IJ to consider alternatives. *See Reid III*, 22 F. Supp. 3d at 92–93. The hearing included brief discussion of the fact that Petitioner would be on probation in Connecticut if released, in the context of the risk of flight. But consideration of the risk of flight is not a purposeful consideration of available measures that could reasonably assure the safety of the community with respect to a repeat drug dealing offender. The court has dealt with situations where such measures are found to be available. Accordingly, the court finds that had the IJ been required to consider whether alternative conditions of release exist that reasonably assure the safety of the community, the IJ could have found that they do.

## IV.  CONCLUSION

Petitioner has shown prejudicial error with respect to his bond hearing and is entitled to a new bond hearing. The court orders that, within ten calendar days, Petitioner receive a new hearing in front of an Immigration Judge that complies with the requirements of *Reid VI*, 390 F. Supp. 3d 201. The parties are ordered to file a status report regarding the new hearing by February 26, 2020.

It is So Ordered.


 /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge